UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re    )  Case No. _____
    )
    )
    )  **Notice of Motion for Relief**
    )  **From (Check All That Apply):**
    )      **Automatic Stay in a Chapter 7/13 Case**
    )      **Chapter 13 Codebtor Stay**
Debtor(s)    )

1. **YOU ARE NOTIFIED** that a motion was filed by _____, the moving party, for (Check all that apply):

   ☐ Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 U.S.C. § 362.

   ☐ Relief from the stay protecting the codebtor and codebtor's property as provided by 11 U.S.C. § 1301. Codebtor's name and service address are: _____
   _____.

2. A copy of the motion is attached. The name and service address of the moving party's attorney (or moving party, if no attorney) are: _____
   _____.

3. If you wish to resist the motion, you must, within 14 days of the service date shown below, file the following with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E. 8th Ave. #2600, Eugene OR 97401:

   a. A written response that states the facts supporting the opposition to the motion by filling in the applicable "response" portions on a copy of the original motion. If the response will be electronically filed, the response must be prepared using the fillable pdf version of the original motion unless the motion was filed on paper and could not be electronically obtained from the movant; and

   b. A fully completed notice of hearing using Local Bankruptcy Form (LBF) 721, including the date and time of the hearing. Available hearing dates and times are posted at https://www.orb.uscourts.gov under the "Hearings" heading. If you do not have internet access, please call the court at (503) 326-1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information.

4. **Failure to Object or Serve Proper Notice of Hearing**. If you fail to file a timely response and notice of hearing, then the automatic stay may expire as to the debtor(s) pursuant to 11 U.S.C. § 362(e) and the stay protecting the codebtor may expire pursuant to 11 U.S.C. § 1301(d), or the court may sign an order without further notice, submitted by the moving party on LBF 720.90, granting relief from the debtor stay and/or codebtor stay.

**720 (12/1/2018)**    Page 1 of 2

I certify that:

(1) The motion was prepared using the fillable PDF version of LBF 720.80; and

(2) On _____ this notice and the motion were served on the debtor(s), any codebtor at the address listed above, the trustee, the U.S. Trustee, members of any committee elected pursuant to 11 U.S.C. § 705, and their respective attorneys.

_____
Signature of Moving Party or Attorney          (OSB#)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| In re | Case No. _____ |
|---|---|
| | Amended |
| | |
| | **[*Check all applicable boxes*]** |
| | **CHAPTER 7/13 MOTION FOR RELIEF FROM** |
| | ☐ Debtor   ☐ Chapter 13 Codebtor Stay |
| | **Filed by Movant:** |
| | _____ |
| | **Objection to Stay Motion filed by Respondent:** |
| Debtor(s) | _____ |

*Instructions to movant: You must file this motion with a notice of motion on Local Bankruptcy Form (LBF) 720. See LBF 720.50, Procedures re: Motions for Relief from Stay, for more information.*

1. **Debt, Default, Other Encumbrances, Description and Value of Collateral** [*To be completed by movant*]

   a. Description of collateral [*e.g., car model, year, and VIN, or property address*]:

   b. Amount of debt: $ _____, consisting of principal of $ _____, interest of $ _____, and other:

   c. Description, amount, and priority of other encumbrances on collateral. If not known, include applicable information from debtor's schedules if available on PACER:

   Total debt secured by collateral [*1.b. + 1.c.*]: $ _____.

   d. Value of collateral: $_____.
   Equity in collateral: $_____, after deducting $_____ of liquidation costs.

   e. Current monthly payment: $_____.

   f. If Chapter 13:

      (1) $_____ postpetition default consisting of [*e.g., $ _____ payments, $_____ late charges, $ _____ fees*]:

  (2) $_____ prepetition default consisting of   amounts specified in proof of claim, or,   consisting of:

 g. If Chapter 7, total amount of default: $_____.

**OBJECTION** [*Identify specific items disputed and specify what you contend are the pertinent facts, including why there is a postpetition default, if applicable; to be completed by respondent*]:

2. **Relief from Stay Should be Granted Because:** [*Check all that apply; to be completed by movant*]:
  Lack of insurance on collateral.
  No equity in the collateral and the property is not necessary for an effective reorganization.
  Failure of debtor to make Chapter 13 plan payments to the trustee.
  Failure of debtor to make direct payments required by Chapter 13 plan.
  Other [*describe*]:

**OBJECTION** [*Specify why relief from stay should be denied. If respondent proposes to cure a postpetition default, detail the cure by attaching a proposed order using LBF 720.90 available at https://www.orb.uscourts.gov under Forms/Local Forms; to be completed by respondent*]:

3. **Background** *[To be completed by movant)*
 a. Date petition filed: _____ Current Chapter: _____ (7 or 13)
  If 13, current plan date _____ Confirmed:   Yes   No
  If 13, treatment of movant's prepetition claim(s) in plan:

  If 7, debtor   has   has not stated on LBF 521.05 or OF B108 that debtor intends to surrender the collateral.

 b. Movant has a lien on the collateral by virtue of [*check all applicable sections, see also paragraph 6 below*]:

    ☐ Security agreement, trust deed, or land sale contract dated _____ and any assignment of that interest to movant. The security interest was perfected as required by applicable law on _____.

    ☐ Retail installment contract dated _____ and any assignment of that interest to movant. The security interest was perfected on the certificate of title on _____.

    ☐ Other [*describe*]:



***OBJECTION*** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:



4. **Request for Relief from Codebtor Stay** [*Chapter 13 only*]
    a. _____, whose address is _____ _____, is a codebtor on the obligation described above, but is not a debtor in this bankruptcy.

    b. Movant should be granted relief from the codebtor stay because [*check all that apply*]: ☐ codebtor received the consideration for the claim held by movant ☐ debtor's plan does not propose to pay movant's claim in full ☐ movant's interest would be irreparably harmed by continuation of the codebtor stay as a result of the default(s) described above ☐ because:



***OBJECTION*** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:



5. **Other Pertinent Information** [*To be completed by movant, if applicable*]:



***OBJECTION*** [*Identify any disputed items and specify the pertinent facts; to be completed by respondent*]:

**720.80 (12/1/2021)**                            Page 3 of 5

Case 22-31915-dwh13    Doc 16    Filed 11/29/22

6. **Relief Requested** [*Check all applicable sections*; *to be completed by movant*]:

   Movant requests relief from the automatic stay to allow it to foreclose its lien on the collateral and to take any necessary action to obtain possession of the collateral.

   Movant has a security interest in real property and requests relief from stay of an act against the collateral and that the relief be binding in any other bankruptcy case purporting to affect the collateral filed not later than 2 years after the date of the entry of an order granting this motion. [*If you check this box, you must complete paragraph 5 above to support this request. If you do not do so, the Court will not grant relief binding in any other bankruptcy case.*]

   Movant requests that the 14-day stay provided by FRBP 4001(a)(3) be waived based on the following cause:

   Other [*describe and explain cause*]:

   **OBJECTION** [*Identify any disputed items and specify the pertinent facts. If respondent agrees to some relief, attach a proposed order using LBF 720.90 available at https://www.orb.uscourts.gov under Forms/Local Forms; to be completed by respondent*]:

7. **Documents**:

   **If movant claims to be secured in paragraph 3.b. above,** movant has attached to and filed with this motion a copy of the documents creating and perfecting the security interest, if not previously attached to a proof of claim.

   **If this case is a chapter 13 case and the collateral is real property**, movant has attached to and filed with this motion a postpetition payment history current to a date not more than 30 days before this motion is filed, showing for each payment the amount due, the date the payment was received, the amount of the payment, and how movant applied the payment.

   **RESPONDENT requests movant provide** respondent with the following document(s), if any are marked below, which are pertinent to this objection:

Postpetition payment history, if not required above.

Documents establishing that movant owns the debt described in paragraph 1 or is otherwise a proper party to bring this motion.

Other document(s) [*describe*]:

<u>Movant/Attorney</u>

<u>Respondent /Attorney</u>

*(By signing, the respondent also certifies that the respondent has not altered the information completed by movant.)*

Signature: _____

Name: _____

Address: _____

_____

Email: _____

Phone #: _____

OSB#: _____

Signature:_____

Name:_____

Address:_____

_____

Email:_____

Phone #:_____

OSB#:_____

*You are hereby notified that the creditor is attempting to collect a debt and any information obtained will be used for that purpose.*

**720.80 (12/1/2021)**　　　　　　　　Page 5 of 5



**Rivermark**
COMMUNITY CREDIT UNION
PO Box 4044
Beaverton, OR 97076-4044
(503) 626-6600 • Fax: (503) 350-0126

# LOAN AGREEMENT AND CONSUMER CREDIT DISCLOSURE STATEMENT ("Agreement")

**Borrower(s)**

AUSTIN A SMITH
33810 NW MOUNTAINDALE RD
NORTH PLAINS, OR 97133

RITA LEUTKENHAUS
33810 NW Mountaindale Rd
NORTH PLAINS, OR 97133

| ANNUAL PERCENTAGE RATE The cost of Your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost You. | AMOUNT FINANCED The amount of credit provided to You or on Your behalf. | TOTAL OF PAYMENTS The amount You will have paid when You have made all scheduled payments. | MEMBER NUMBER | DATE 01/20/2022 LOAN NUMBER 121 |
|---|---|---|---|---|---|
| 7.990 % | $ 1,594.92 | $ 6,906.00 | $ 9,681.55 | ▓▓▓▓ | |

**Your payment schedule will be:**

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 59 | $161.37 | Monthly Beginning | 03/05/2022 |
| 1  (e) | $160.72 | Beginning | 02/05/2027 |
| (e) = estimate | | | |

☐ **VARIABLE RATE.** Your loan will be subject to a Variable Rate which is based on the highest dividend/interest rate paid on the shares pledged as Collateral on the date You establish Your loan, and subsequently, each day thereafter as of _____ ("Index") plus _____ ("Margin"). The Index plus the Margin equals the Interest Rate. Changes in the Index will cause changes in the Interest Rate on the day of any such change in the Index. Increases or decreases in the Interest Rate will cause like increases or decreases in the Finance Charge and will affect the number of Your regularly scheduled payments. There is no limit on the Interest Rate that may be charged on Your loan, other than the maximum permitted under applicable law. For example, if Your loan amount is $10,000.00, for 60 months with an initial Interest Rate of 5.00% and Your Interest Rate increased to 15.00% after 12 months, You would be required to make 14.04 additional payments.

You may obtain property insurance from anyone You want that is acceptable to the Credit Union.
☐ **Required Deposit:** The Annual Percentage Rate does not reflect Your required deposit.
**Assumability:** Your loan is not assumable.
**Security:** You are giving a security interest in:
☒ The goods or property being purchased.
☒ Personal property (other than household goods or any dwelling) securing other loans with Us.
☐ Your present and future share deposits in the Credit Union.
☐ Other _____

**Prepayment:** If You pay off early, You will not be charged a penalty.
**Late Charge.** If Your payment is more than ten days late, You will be charged the greater of $20.00 or 6.00% of the payment due.

**Filing Fee $_____ Non-Filing Insurance $_____**

See Your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

☒ This is a fixed-rate loan with a simple Interest Rate of ___7.99___%   ☐ This is a variable-rate loan with a present Interest Rate of _____%

| Itemization of Amount Financed of $ 6,906.00 | Amount Given to You Directly (check, cash, deposit) $ | Amount Paid on Your Account (Credit Union Loan(s)) $ |
|---|---|---|
| **Amount Paid to Others on Your Behalf:** To: GAP INSURANCE FEE | $ 524.00  To: | $ 0.00 |
| To: EUGENE KUZMENKO | $ 6,382.00  To: | $ 0.00 |
| To: | $ 0.00  To: | $ 0.00 |
| To: | $ 0.00  To: | $ 0.00 |
| To: | $ 0.00  To: | $_____ |
| To: | $ 0.00  To: | $_____ |

**Security Interest.** To secure all obligations of Borrower(s) hereunder to the Credit Union, You give a security interest and lien in and upon the following property, including any and all accessions, related insurance proceeds or insurance premium refunds.

| Year | Make | Model | V.I.N./Serial No. | Key/Lic. No. |
|---|---|---|---|---|
| 2005 | SUBARU | FORESTER | JF1SG65625G737001 | |

**Other**
$0.00

## ADDITIONAL PROVISIONS OF AGREEMENT

1. **PROMISE TO PAY.** You promise to pay the amount borrowed, plus interest, other permitted charges and fees to the order of Rivermark Community Credit Union ("Lender") or assignee, according to the terms of this Agreement (including those set forth in the Federal Truth-in-Lending Disclosure). Numbers, phrases or words preceded by a ☐ are applicable only if the ☐ is marked, e.g. ☒. In this Agreement, the use of the words "Credit Union," "We," "Us," and "Our" mean Rivermark Community Credit Union. The Borrower(s) and any Co-Signer(s) of the Agreement, individually and collectively, are sometimes referred to as "You" or "Your."

2. **LIABILITY OF PARTIES.** Each person who signs this Agreement as a Borrower or Co-Signer or who endorses or negotiates the loan proceeds check related to this Agreement (other than a Dealer/Payee) and whose name appears in this Agreement as Borrower or Co-Borrower agrees to be individually and jointly obligated to pay Your loan in accordance with the terms and conditions of this Agreement. Any person who signs this Agreement as "Owner of Collateral (other than Borrower)" or the loan proceeds check related to this Agreement and checks the box preceding "Owner of Collateral (other than Borrower)" does so voluntarily and solely to give a security interest in the Collateral shown in the Security Interest section in this Agreement, but is not personally liable for any indebtedness created by this Agreement.

3. **INTEREST.** Interest will be charged on the unpaid balance of Your loan at the Simple Interest Rate (or at a rate computed according to the Variable Rate provisions) designated in this Agreement until Your balance is paid in full. Any payment may be made early without penalty, and any early payments will have the result of reducing the total amount of interest paid. Any payment made after the due date will have the result of increasing the total amount of interest paid.

4. **PAYMENTS.** Your payments are to be made in lawful money of the United States according to the Payment Schedule (adjustable to correlate to interest rate changes as computed according to the Variable Rate provisions) in this Agreement. Any partial prepayment of Your loan will not delay Your next scheduled payment. If, when You pay Your last scheduled payment, the amount You pay exceeds Your loan balance, then You give the Credit Union permission to deposit the excess to Your share account.

5. **COLLATERAL.** The Credit Union has been granted a security interest or lien in or upon the Collateral designated in this Agreement or in a separate document such as a Security Agreement, Assignment, Pledge or similar document (the subject matter of such a security interest or lien is referred to as "Collateral" in this Agreement). Except for the Credit Union's security interest or lien, the Collateral is owned free and clear from any adverse claim, security interest or encumbrance other than as now disclosed to the Credit Union. Without the express written consent of the Credit Union, no other liens, security interests or encumbrances will be allowed to attach to the Collateral. You agree to inform the Credit Union immediately if the Collateral is to be moved from Your address shown in this Agreement or at such other address at which You have informed the Credit Union the Collateral is now located. The Collateral shall not be sold or ownership otherwise transferred and at all times the Collateral shall be kept in good repair. The Collateral shall not be used for any unlawful purpose. The Credit Union shall receive the full cooperation of the Borrower, Co-Signer or Owner in obtaining everything that We require to place and/or maintain Our security interest in and/or lien on the Collateral. The Credit Union may examine and inspect the Collateral at any time wherever located. All taxes or assessments on the Collateral, including title and registration fees, shall be paid as they come due, and if not paid, the Credit Union may pay them and shall be entitled to reimbursement or, alternatively, to add any amount so paid to the unpaid balance of Your loan subject to the applicable interest rate.

   Collateral (other than household goods or any dwelling) given as security under this Agreement or for any other loan You may have with Us will secure all amounts You owe Us now and in the future if that status is reflected in the "Truth-in-Lending Disclosure" in any particular Agreement evidencing such debt.

6. **LIEN ON SHARES.** If shares or deposits are pledged as Collateral for this loan, You understand that the balance in Your account(s) on deposit with the Credit Union must be kept at least equal to the balance of Your loan until Your loan is repaid in full. We may, however, permit You to maintain or reduce Your account balances below Your loan balance. If You are in default, the Credit Union may apply all shares (except Keogh accounts and IRA accounts) then on deposit to Your loan up to an amount sufficient to repay Your loan.

7. **PROPERTY INSURANCE.** You promise to maintain property insurance in an amount necessary to protect Our security interest in the Collateral, with Us named as loss payee for Our protection. Such insurance shall protect against loss by fire, theft, and collision and will provide "all risks" hull insurance in the case of aircraft or boats and accessories thereto, if any. You may provide the required property insurance through an existing policy or by a policy You independently obtain and pay for from a person of Your own choosing, providing such person is reasonably acceptable to Us. You agree to deliver satisfactory evidence of the insurance policy to Us within any time period specified in any notice from Us or on Our behalf. If You do not get or keep this insurance, We may, at Our sole option, obtain insurance to protect Our interest and add its costs to Your loan and You agree to pay for it (by such means as increasing Your payment or increasing Your loan term). We are under no obligation to obtain insurance on Your behalf. If We do obtain insurance, the cost of obtaining that insurance may be added to Your loan balance, subject to the applicable interest rate. We have the authority to obtain, adjust, settle or cancel insurance and may endorse any party's name on any draft.

## WARNING

Unless You provide Us with evidence of the insurance coverage as required by Our contract or loan agreement, We may purchase insurance at Your expense to protect Our interest. This insurance may, but need not, also protect Your interest. If the collateral becomes damaged, the coverage We purchase may not pay any claim You make or any claim made against You. You may later cancel this coverage by providing evidence that You have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by Us. The cost of this insurance may be added to Your contract or loan balance. If the cost is added to Your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date Your prior coverage lapsed or the date You failed to provide proof of coverage.

The coverage We purchase may be considerably more expensive than insurance You can obtain on Your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

## ADDITIONAL PROVISIONS OF AGREEMENT (continued)

8. **DEFAULT.** Your loan shall be in default if any of the following things occur: (a) You do not make any payment or perform any obligation under this Agreement or any other agreement that You may have with the Credit Union; or (b) You have made a false or misleading statement in Your credit application and/or in Your representations to the Credit Union while You owe money on this loan; or (c) You should die, or be involved in any insolvency, receivership or custodial proceeding brought by or against You; or (d) a judgment or tax lien should be filed against You or any attachment or garnishment should be issued against any of Your property or rights, specifically including anyone starting an action or proceeding to seize any of Your funds on deposit with the Credit Union; and/or (e) the Credit Union should, in good faith, believe Your ability to repay Your indebtedness hereunder is or soon will be impaired, time being of the very essence.

   Upon any occurrence of default, and to the extent permitted by law, We may declare the entire balance of Your loan immediately due and payable, without prior notice or demand. If the entire balance is not then paid immediately upon default, and if permitted by law, the Collateral shall be voluntarily surrendered to the Credit Union at a time and place acceptable to it. If this is not done, to the extent permitted by law, the Credit Union may enter the premises where the Collateral is located and take possession of it and the Credit Union may assert the defense of a superior right of possession as the holder of a security interest to any offense of alleged wrongful taking and conversion. The Credit Union may sell or dispose of the Collateral in any manner permitted by law, and any resulting deficiency on Your loan shall be immediately paid to the Credit Union. In the event collection efforts are required to obtain payment on this account, You agree to pay all court costs, private process server fees, investigation fees or other costs incurred in collection and reasonable attorneys' fees incurred in the course of collecting any amounts owed under this Agreement or in the recovery of any Collateral. As permitted by law, the Credit Union shall have the right to impress and enforce a statutory lien upon the shares and dividends of any Borrower indebted to it and We may enforce Our right to do so without further notice to You. Additionally, You agree that We may set-off any mutual indebtedness.

9. **ASSUMABILITY.** Your loan is not assumable.

10. **DELAY IN ENFORCEMENT.** We do not lose Our rights under this or any related agreement if We delay enforcing them. We can accept late payments, partial payments, or any other payments, even if they are marked "paid in full" without losing any of Our rights under this Agreement. If any provision of this or any related agreement is determined to be unenforceable or invalid, all other provisions remain in full force and effect.

11. **GOVERNING LAW.** You understand and agree that this Agreement will be governed by the laws of the State of Oregon, except to the extent that federal law controls.

12. **INDEX.** If this is a variable rate loan, the index referred to in this Agreement is an Index used to calculate Your actual Interest Rate. If this Index ceases to exist, We may adopt a new Index which will then be used to figure Your actual Interest Rate.

13. **RETURNED PAYMENT.** You will be charged $25.00 for any check (or other negotiable instrument used for payment) which is returned unpaid.

---

### NOTICE TO BORROWER AND ANY CO-BORROWER

By endorsing or negotiating the loan proceeds check related to this Agreement: (1) You accept and agree to the terms of this Agreement; (2) You grant Us a security interest or lien in or upon any Collateral designated in this Agreement; and (3) You promise to obtain and maintain property insurance (if applicable) according to the Property Insurance provision above and any "Agreement to Provide Insurance" given to You along with this Agreement.

If You do not agree to any of the terms of this Agreement, do not endorse the loan proceeds check and return this Agreement and check to Us immediately at the address shown on the front of the check.

---

Copyright Oak Tree Business Systems, Inc., 2010-2019. All Rights Reserved.  Page 3 of 4  OTBS 012A RMAR (7/20)

Case 22-31915-dwh13    Doc 16    Filed 11/29/22

Further paragraphs of this Agreement are set forth in pages 1, 2, and 3 of this Agreement, and You agree to be bound by all of the provisions of this Agreement.

**NOTICE:** You understand and agree that by endorsing or negotiating check number _____N/A_____, that You acknowledge receiving a copy of this Agreement (and Exhibits, if any) that You have read it in its entirety and that You accept and agree to all of the terms thereof including the provisions set forth on the separate Page titled "Additional Provisions of Agreement."

**Signatures of Borrowers':** You have signed this Agreement on _____01/20/2022_____ and acknowledge that You have read it, that You understand it, and that You have received a completely filled-in copy of it.

X *Austin Smith*
X Austin Smith (Jan 21, 2022 09:41 PST)
Signature of Borrower

X _____
Signature of Borrower

X *Rita Luetkenhaus*
X Rita Luetkenhaus (Jan 21, 2022 11:52 PST)
Signature of Borrower

X _____
Signature of Borrower

**Signatures of Owners' of Collateral (other than Borrower):** Your signature below is voluntary and is for the sole purpose of granting Us a security interest in the Collateral shown in the Security Interest section in this Agreement. You are not personally liable for any indebtedness created by this Agreement.

| Name of Owner of Collateral (other than Borrower) (Please Print) | X Signature of Owner of Collateral (other than Borrower) | Date |
|---|---|---|
| Street Address | City | State | Zip |
| Identification Number | Identification Type | Issue Date | Expiration Date | Issued By |

| Name of Owner of Collateral (other than Borrower) (Please Print) | X Signature of Owner of Collateral (other than Borrower) | Date |
|---|---|---|
| Street Address | City | State | Zip |
| Identification Number | Identification Type | Issue Date | Expiration Date | Issued By |

| Name of Owner of Collateral (other than Borrower) (Please Print) | X Signature of Owner of Collateral (other than Borrower) | Date |
|---|---|---|
| Street Address | City | State | Zip |
| Identification Number | Identification Type | Issue Date | Expiration Date | Issued By |

**Co-Signer:** You understand that You are fully liable to pay any amounts due under this Agreement. The Credit Union does not have to make any demand on any other person obligated under this Agreement, nor take any steps to repossess any Collateral before demanding that You pay any amount. You have read this entire Agreement, You understand it, and You agree to be bound by all of the terms.

| Name of Co-Signer (Please Print) | X Signature of Co-Signer | Date |
|---|---|---|
| Street Address | City | State | Zip |
| Identification Number | Identification Type | Issue Date | Expiration Date | Issued By |

RIVERMARK COMMUNITY CU
PO BOX 661298
SACRAMENTO CA 95866-1298

## OREGON VEHICLE CERTIFICATE OF TITLE

OREGON DRIVER AND MOTOR VEHICLE SERVICES CERTIFIES THE PARTY IS LISTED AS OWNER OF THE DESCRIBED VEHICLE DOCUMENTS FILED WITH DMV SHOW THE VEHICLE IS SUBJECT TO THE OWNERSHIP INTERESTS SPECIFIED

CONTROL NUMBER: 4586332

| TITLE NUMBER | ISSUE DATE | EQUIPMENT NUMBER |
|---|---|---|
| OR0003541846 | 04/04/2022 | |

| YEAR | MAKE | STYLE | MODEL | VEHICLE IDENTIFICATION NUMBER | SURVIVORSHIP |
|---|---|---|---|---|---|
| 2005 | SUBA | 4D | FOR | JF1SG65625G737001 | N/N |

OWNER/LESSEE
SMITH, AUSTIN ALEXANDER
LUETKENHAUS, RITA K W
33810 NW MOUNTAINDALE RD
NORTH PLAINS OR 97133-6139

ODOMETER READING | ODOMETER DATE
ODOMETER MESSAGE

### TITLE BRANDS
The title Brand printed below indicates the history condition, or circumstances of the vehicle for which this title has been issued. Please see back of title for more information

- NONE -

VOID IF ALTERED OR ERASED

USE THIS SECTION WHEN THE ONLY CHANGE IS TO REMOVE A SECURITY INTEREST FOR ANY OTHER CHANGES SEE INSTRUCTIONS ON REVERSE

If there is no change in owners as shown above AND all security interest holders have released interest one registered owner must sign and date here if not completing a separate application for title In addition if your address has changed cross out the old address and write the new address and county of residence on the front of the title Mail the title and the fee to DMV 1905 Lana Ave NE Salem OR 97314

SIGNATURE (DOES NOT RELEASE INTEREST) | DATE
X

To release interest in the vehicle, complete the reassignment on back of the title

SECURITY INTEREST HOLDER/LESSOR
SIH  RIVERMARK COMMUNITY CU
     8505 SW CREEKSIDE PL
     BEAVERTON OR 97008-7165

SIGNATURE AND COUNTERSIGNATURE OF SECURITY INTEREST HOLDER OR LESSOR RELEASING ALL INTEREST | DATE
X

SIGNATURE AND COUNTERSIGNATURE OF SECURITY INTEREST HOLDER OR LESSOR RELEASING ALL INTEREST | DATE
X

SEE REVERSE OF TITLE FOR APPLICATION INSTRUCTIONS

VOID WITHOUT CHAIN LINK WATERMARK

735-410 (1 19)



Rivermark Community Credit Union
P.O. Box 4044
Beaverton, OR 97076-4044
(503) 626-6600

## APPLICATION, DISCLOSURES, AND PROGRAM AGREEMENT for CONSUMERSAFE DEBT PROTECTION PLAN

| BORROWER'S NAME | CO-BORROWER'S NAME | ACCOUNT NUMBER | LOAN NUMBER | EFFECTIVE DATE |
|---|---|---|---|---|
| AUSTIN A SMITH | RITA LEUTKENHAUS | | 121 | 01/20/2022 |

**This Product is Optional.** Your purchase of the ConsumerSafe Debt Protection Plan ("Plan") is optional. Whether or not you purchase this protection will not affect your application for credit or the terms of any existing credit agreement you have with the Financial Institution. You may cancel the Program at any time. See the Program Agreement for an explanation of how the Program may be terminated.

☒ **Yes – please select one coverage plan and sign below**

| | PLAN 1: Plan #452674 | | PLAN 2: Plan #452675 | | PLAN 3: Plan #452676 | |
|---|---|---|---|---|---|---|
| **I ELECT:** *(Check only one box)* | **Death:** cancels loan balance<br>**Disability:** cancels 6 Payments<br>**Involuntary Unemployment:** cancels 3 Payments | | **Death:** cancels loan balance<br>**Disability:** cancels 6 Payments | | **Death:** cancels loan balance | |
| | ☐ Single | ☒ Joint | ☐ Single | ☐ Joint | ☐ Single | ☐ Joint |
| **Cost** per $1,000 monthly outstanding loan balance: | $2.69 | $4.86 | $1.57 | $2.76 | $0.71 | $1.13 |
| **Estimated Total Fee:** (closed-end loans only) | $_____ | $ 1,180.63 | $_____ | $_____ | $_____ | $_____ |

**Benefit Maximums**

**Death** Protection cancels a maximum of **$75,000.**

**Cancellations** listed are per occurrence.

**Monthly cancellations are limited to $1,000 per month and a total of $15,000 over the term of the loan, per each Protected Event and per each protected Borrower.**

☐ **No – please initial to indicate no coverage selected**
    I do not wish to apply for voluntary ConsumerSafe Debt Protection at this time. _____

### Application Eligibility

To be eligible to apply, I must meet the following conditions. By signing this Application, I am stating that: (1) I am under age 70; (2) *if applying for Death or Disability protection:* During the last 2 years, I have not been advised of or treated for: cancer, heart attack or coronary artery disease, stroke, cirrhosis, AIDS, or any disorder of my immune system, or had any test showing evidence of antibodies to the AIDS virus (a positive HIV test); (3) *if applying for Disability protection:* I am presently working twenty-four (24) or more hours per week; and (4) *if applying for Involuntary Unemployment protection:* I am not self-employed.

**Seasonal Workers:** Whether you qualify for Involuntary Unemployment Benefits at the end of your seasonal employment will depend on whether you qualify for your state's unemployment benefits.

**Email Communication**: By signing this application, you acknowledge and agree that our administrator can (1) send you claims forms or other administrative forms to the email address that you provide to us and (2) otherwise communicate to you via email in order to administer your coverage if you activate your protection. Our administrator does not sell your information and will not use your email address for any purpose other than as outlined herein.

### Borrowers' Signatures

I acknowledge and agree that: **(a)** I meet the eligibility requirements listed above. If it is discovered that I do not meet the eligibility requirements above, my participation in the Plan will be terminated, I will receive a refund of any fees paid, and an otherwise valid claim will be denied; **(b)** I have received and thoroughly read the *ConsumerSafe Debt Protection Plan Agreement ("Agreement")*, and agree to abide by the terms of the Agreement; **(c)** I authorize the Plan fees to be added to my loan each month; and **(d)** I understand that I may not be eligible for all benefits contained in the Plan. This document is hereby incorporated into Borrower's loan documentation as if fully set forth therein. **There are eligibility requirements, conditions, and exclusions that could prevent you from receiving benefits under the Program. See the Program Agreement for details.**

| Borrower 1 Signature<br>*Austin Smith*<br>Austin Smith (Jan 21, 2022 09:41 PST) | Date<br>Jan 21, 2022 |
|---|---|
| Borrower 2 Signature *(if applying for Joint Protection)*<br>*Rita Luetkenhaus*<br>Rita Luetkenhaus (Jan 21, 2022 11:52 PST) | Date<br>Jan 21, 2022 |

| PROGRAM AGREEMENT |
|---|

*As used in this ConsumerSafe Debt Protection Plan Program Agreement ("Agreement"), **"You", "Your" or "Borrower"** means the person(s) who are obligated to repay a loan to us who have purchased debt protection under this Agreement. **"We", "Our", "Us"** means, Rivermark Community Credit Union, P.O. Box 4044, Beaverton, OR 97076-4044. **"Plan Administrator"** means Minnesota Life Insurance Company, 400 Robert Street North, St. Paul, Minnesota, 55101, or one of its affiliates, or a contracted third party.*

This Agreement amends your loan or credit agreement. By enrolling in the ConsumerSafe Debt Protection Plan ("Plan"), you agree to abide by the terms of this Agreement. The ConsumerSafe Debt Protection Application is a part of this Agreement and is hereby incorporated as if fully set forth herein.

## DEFINITIONS

**Effective Date** means that date on which your Plan becomes effective, which is the later of: (1) the date you enroll in, and your eligibility is approved for, the Plan; or (2) the date of your first advance under a protected open-end credit plan.

**Presently working twenty-four (24) or more hours per week:** This term means that you are actively working for income for twenty-four (24) hours or more per week. "Working" means actually performing your job duties and not off of work due to leave of absence; layoff; routine or seasonal work interruption; or any other reason.

**Outstanding Balance** and **Payment:** "Outstanding Balance" means the outstanding loan balance as of the date a Protected Event occurs. "Payment" means the minimum monthly loan payment scheduled under your loan agreement. Outstanding Balance and Payment both refer to the protected amount under the Plan and include principal, interest, the Plan fee and any amounts which the creditor and borrower agreed to finance as part of the loan at the time the credit is extended. It does not include late fees or other fees; real estate taxes or property insurance premiums; or any amount that represents defaults in scheduled payments of either interest or principal. A scheduled lump-sum Balloon payment will only be protected if the Protected Event cancels the Outstanding Balance. Additionally, any advance taken during any period of Involuntary Unemployment or Disability will not be protected and the payment for that advance will not be cancelled. You will be responsible for re-paying any amounts that are not cancelled.

**Pre-existing condition:** means a condition for which you received or had medical treatment, advice or diagnostic tests either for that same condition or a related condition within the six-month period immediately prior to the Effective Date and immediately prior to each and every advance taken. However, any Protected Event resulting from any such condition or a related condition will not be excluded if the Protected Event commences six months or more after the Effective Date of protection or six months or more after the advance is taken.

## TERMS OF PROTECTION

**Who is eligible for protection?**

This Plan protects an eligible Borrower ("Borrower 1") against Protected Events that occur while you are enrolled in the Plan ("Single Protection"). At an additional cost, you may purchase protection for a Co-Borrower ("Borrower 2") against the Protected Events within the Plan purchased ("Joint Protection"). Co-signers, guarantors, and non-borrower owners of collateral are not eligible for protection.

**What types of loans are eligible for protection under the Plan?**

The following types of loans are eligible for protection if the Plan is made available to you on that loan type: closed-end consumer loans if the loan has a term of 120 months or less, revolving lines of credit, and credit cards.

**What is the Plan Fee and how is it collected?**

The Plan Fee is the amount you pay for the Protection. It is calculated by applying the rate per $1,000 of your monthly outstanding balance or loan amount and will be charged and collected monthly. For closed-end loans, the fee becomes part of your required monthly loan payment. For open-end loans, or if Debt Protection is added after the start of your loan, the fee may be added to your outstanding balance as an advance each month without increasing your minimum monthly payment due. This may increase the time it takes to fully re-pay the loan and interest will accrue on the debt protection advance. If you fail to pay the fee, we can cancel the protection or, at our option, add the fee to your outstanding balance upon which it will accrue interest. Such addition may extend the term of your loan.

**Can the Plan Fee and terms of this Agreement Change?**

Yes. We can change the terms of this Agreement, including the rates, at any time. If we do so, you will be provided prior notice and an opportunity to cancel your Agreement under the Plan.

**Can this Agreement be contested?**

Yes. If we find that you did not meet the eligibility requirements at the time of your application, your protection under the Plan will be removed, you will receive a refund of fees paid, and an otherwise valid claim will be denied.

## PROTECTED EVENTS

The following describes the types of Protected Events and the protection afforded under each Plan:

<u>**DEATH**</u> *(All Plans; Joint Protection Available)*

**What is the Death benefit?**

For each protected borrower, we will cancel the amount of your Outstanding Balance as of the date of death, up to $75,000. If two protected Borrowers die simultaneously, we will cancel the Outstanding Balance, up to $75,000. In no event will an excess of $75,000 be cancelled.

<u>**DISABILITY**</u> *(Plans 1 & 2; Joint Protection Available)*

**What does Disability mean and how do I qualify for Disability?**

Disability means your continuous inability, due to sickness or injury, to perform the substantial and material duties of your regular occupation and you are under the regular care and treatment of a licensed physician or licensed health care provider. To qualify for Disability protection, you must be disabled for 30 consecutive days. Benefits begin to accrue on the first (1st) day that you are disabled.

**What amounts will be cancelled under the Disability protection?**

For each occurrence of Disability, we will cancel 1/30th of the Payment for each day that you are disabled beginning with the first (1st) day of Disability and continuing for up to six (6) Payment cancellations. However, cancellations will immediately cease if you recover or return to work; or if the loan is paid off, is refinanced, or is discharged for any reason. The maximum monthly cancellation is $1,000. Disability cancellations are limited to a total of $15,000 over the term of the loan per each protected Borrower.

**What if the same or related disability occurs?**

*Please see the "What if I suffer a recurrence?" question in the General Provisions section below.*

**INVOLUNTARY UNEMPLOYMENT** *(Plan 1; Joint Protection Available)*

**What does Involuntary Unemployment mean and how do I qualify for protection?**

Involuntary Unemployment means that you involuntarily lost your full-time employment and you are eligible for, and are receiving, unemployment benefits.

To qualify for Involuntary Unemployment protection, the following requirements must be met:

1. You are involuntarily unemployed for 30 consecutive days; and
2. You are receiving unemployment benefits for the period of unemployment for which you are making a claim under this Agreement.

**What amounts are cancelled under Involuntary Unemployment protection?**

We will cancel 1/30th of the Payment for each day you are involuntarily unemployed, beginning with the first (1st) day of Involuntary Unemployment and continuing for: (a) up to three (3) Payment cancellations per occurrence of Involuntary Unemployment; (b) until you discontinue receiving unemployment benefits for any reason; or (c) you regain employment; whichever is earlier. The maximum monthly cancellation is $1,000. Involuntary Unemployment cancellations are limited to a total of $15,000 over the term of the loan per each protected Borrower.

## EXCLUSIONS

*Exclusions apply to both the Outstanding Balance and any and all advances under an open-end credit plan.*

**Benefits will not be provided under any Protected Event if the Protected Event:**

(1) is due to suicide committed within the first 2 years of protection; (2) is due to an intentionally self-inflicted injury; (3) is due to a Pre-existing Condition; (4) results from war or any act of war, whether declared or undeclared; (5) occurs on or after your 70th birthday.

The following exclusions apply in addition to the above:

**Benefits will not be provided under Disability protection if:**

The disability is related to a normal pregnancy, normal childbirth, or elective abortions. Complications due to pregnancy or childbirth will only be protected if the complications themselves are the cause of the disability.

**Benefits will not be provided under Involuntary Unemployment protection if:**

(1) your job is terminated because: (a) you retire; (b) you quit or resign your employment for any reason; (c) you lose your employment due to: (i) willful or criminal misconduct; (ii) discharge from active military service; (iii) disability caused by sickness or injury; or (iv) a strike, lockout, or labor dispute; (2) the involuntary unemployment commences within 90 days after your Effective Date.

## GENERAL PROVISIONS

**How do I obtain benefits and verify a Protected Event under the Plan?**

To obtain benefits under the Plan, you must notify us of a Protected Event within 30 days or as soon as possible, but no later than six (6) months after the occurrence of the Protected Event, and provide any documentation or information required by us at the time of your claim and/or throughout the period for which Payments are being cancelled. You must be able to verify the Protected Event to our satisfaction. If your delay in filing a claim prevents us in any way from determining eligibility under the Plan, no benefit will be issued.

**What if I sustain an unrelated injury or sickness while I am disabled?**

If you are disabled ("original occurrence") and sustain an additional sickness or injury which would be in and of itself disabling, the additional sickness or injury will not be considered a new occurrence of Disability, but rather will be considered the same occurrence. This means that you will receive benefits only if you did not exhaust your maximum per-occurrence benefits in connection with the original occurrence.

**What if I suffer a recurrence of the same or related Protected Event?**

If you incur a claim for the same type of Protected Event again within six (6) months after you have recovered or returned to full-time work, we will consider this a continuation of the prior event. (For disability, however, this only applies if you are disabled due to the same condition.) This means that the maximum number of cancellations per occurrence for the prior event will still apply; if that maximum was already reached, no benefits will be issued. If you incur a claim for the same type of Protected Event again more than six (6) months after you have recovered or returned to full-time work, we will consider this a new event and the terms and conditions of the Plan apply as if no prior event occurred. This provision applies whether you return to work full-time with the same or different employer.

**What is the status of my loan following the occurrence of a Protected Event?**

During the time it takes to process your request for benefits, you are responsible for making your monthly payment by the due date. Once benefits begin, you are responsible for any difference between the minimum payment due on the loan and the amount that is cancelled.

**What if the term of my loan ends while I am receiving cancellations under the Plan?**

Regardless of the number of cancellations you may otherwise be entitled to, cancellations will cease if the loan is paid off, is refinanced, or is discharged for any reason.

**How can the Plan be terminated?**

You may terminate this Agreement at any time by writing us at Rivermark Community Credit Union, P.O. Box 4044, Beaverton, OR 97076-4044. If you do so within thirty (30) days of your enrollment in the Plan, we will credit your loan account for any fees charged for this protection. We can terminate this Agreement by giving you written notice at least thirty (30) days in advance of the termination. Termination by us or you will be effective on the first of the month following termination. Fees for the month in which notice of termination is received will still be due and collected from the loan payment.

Your Plan participation will terminate without advance notice if: (1) your loan is paid off, refinanced, or discharged for any reason; (2) required loan payments are past due by 90 days or more; (3) you fail to pay the Plan Fee; (4) the protected Borrower under Single Protection (or both Borrowers under Joint Protection) reaches the age of 70 or dies; or (5) the protected Outstanding Balance is paid off under the terms of the Plan or all maximum cancellations are reached. If you bring your loan current after your Protection has been terminated for delinquency, protection will not be reinstated automatically, and you must re-apply for the Plan.

**What are the tax implications?**

You may be subject to federal, state and local taxes on the amount of your cancelled loan payment or balance. You should consult your tax advisor. We or the Plan Administrator do not provide you with guidance on the tax implications, if any, of a cancelled debt.

**What if I have questions about the Plan?**

Telephone us at (503) 626-6600 or 1-800-452-8502 or write to us at Rivermark Community Credit Union, P.O. Box 4044, Beaverton, OR 97076-4044 if you have any questions regarding this Plan.