Below is an opinion of the court.

_David W. Hercher_
_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | |
| **Rita Katherine Luetkenhaus**, | Case No. 22-31915-dwh13 |
| Debtor. | MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS TO CLAIMS OF CAREY SMITH AND RICHARD LUETKENHAUS[1] |

## I.    Introduction

Debtor, Rita Luetkenhaus, objects to the proofs of claim filed by Carey Smith and Richard Luetkenhaus. Because she and Richard Luetkenhaus share a last name, I will refer to them by their first names. Although the two claim objections were heard separately, this memorandum combines my decisions on them because they have common issues of fact and law.

---

[1] This disposition is specific to this case. It may be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

For the reasons that follow, I will—

- allow Smith's claim for essentially its face amount, but give priority under 11 U.S.C. § 507(a)(1) only to his Oregon Court of Appeals judgment, and

- allow Richard's claim for about 95 percent of the filed amount, with 80 percent of that as a 507(a)(1)-priority claim.

## II.    Background

### A.    *Smith's circuit court judgment*

On October 23, 2012, the Washington County, Oregon, Oregon circuit court awarded Smith a $15,000 supplemental judgment for attorney fees in a domestic-relations case by him against Rita.[2] The caption of the judgment states that it addresses "the Matter of the Marriage" of Smith and Rita. The case number is C06-2236-DRC.

### B.    *Rita's 2012 bankruptcy*

In 2012, Rita filed a chapter 13 petition. (I will refer to papers filed in the 2012 case and in a 2016 case described below by the case numbers, 12-38042 or 16-30474, and the papers' ECF or claim numbers; I will refer to papers filed in this case just by the ECF or claim numbers.) In the 2012 case, Smith filed a proof of claim for his circuit court judgment, claiming it as a nonpriority, unsecured claim. She objected to the claim,[3] and the court entered an order sustaining the objection in part but allowing it as a nonpriority, unsecured claim for $15,000.[4]

---

[2] Claim 3-2 at PDF 6–7.
[3] No. 12-38042 ECF No. 26.
[4] No. 12-38042 ECF No. 36.

Page 2 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

### C. Smith's appellate judgment

In 2015, the Oregon Court of Appeals affirmed a decision of the circuit court awarding child custody to Smith and granted him a money award of $8,327.75.[5] (I will refer to that court as the court of appeals and to the Ninth Circuit Court of Appeals as the Ninth Circuit.) The court of appeals judgment's caption refers to "Washington County Circuit Court C062236DRC"—the number of the case in which Smith obtained his 2012 circuit court judgment.

In conjunction with the court of appeals' affirmance, it also entered a separate Order Allowing Attorney Fees and Costs and Disbursements. The order explains the money award, and it begins by describing the judgment appealed from as "changing custody of the parties' children from mother to father."

### D. Rita's child-support payments to Smith

In September 2016, the Oregon Department of Justice's Oregon Child Support Program began to administer a child-support order requiring Rita to pay Smith on account of their two children. The amount billed under the order was reversed some time after November 2017 after the program received an "additional order."[6]

In an early January 2018 email from Smith to Rita, he referred to a letter from the Child Support Program and said the "the case is being closed," with

---

[5] Claim 3-2 at PDF 8–9.
[6] ECF No. 60-1 Ex. 1.

the result that "there is no judgment money award to satisfy." He also referred to the appellate judgment as an unpaid obligation from her to him "in excess of the reimbursement amount that I owe you," but he said he nonetheless would follow through on an agreement to "reimburse" her. In an email the next day, she agreed to accept payment of $3,907.45 and thanked him for "honoring your word." In an email about two weeks later, he said he had delivered to her a check for $3,907.45 "minus the $122 credit to me, from the previous child support case."[7] The check he wrote to her and that she cashed was for $3,784.45. On it, he wrote that it was for "Child Support Reimbursement." She indorsed and deposited it.[8]

### E.    *Richard's judgment*

In 2014, the Washington County Circuit Court awarded Richard a $60,000 supplemental judgment for attorney fees in a case by him against Rita.[9]

### F.    *Rita's 2016 bankruptcy*

In 2016, Rita filed another chapter 13 petition. Richard filed a proof of claim for $61,183.25 for "Judgment for Attorney fees awarded in Dissolution of Marriage involving a child," claiming entitlement to priority as a domestic support obligation (DSO) under 507(a)(1)(A) or (B).[10] Smith filed a proof of claim for $28,163.50 for "DSO attorney fees awarded in state court

---

[7] ECF No. 74-1 Ex. 1 at 1.
[8] ECF No. 74-2 Ex. 2.
[9] Claim 6-1 at PDF 6–7.
[10] No. 16-30474 claim 3-1.

Page 4 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

concerning child welfare," also claiming DSO priority.[11] Rita objected to both proofs of claim.[12]

Richard objected to confirmation of Rita's chapter 13 plan, arguing that it did not provide for payment in full of his claim entitled to priority as a DSO.[13]

In a letter opinion addressing Richard's confirmation objection and Rita's objection to his claim, the bankruptcy judge in the 2016 case said that (1) of the total claim, 80 percent, or $48,946.60 as of the 2016 petition date, was a DSO; (2) Richard "has a priority claim of $48,946.60"; and (3) because the plan did not provide for payment of the claim in full, the plan could not be confirmed.[14] The next day, the court entered an order denying confirmation of the plan.[15] The court did not enter a separate order addressing Rita's objection to Richard's claim.

In a separate letter opinion addressing Rita's objection to Smith's claim, the judge said that Smith's claim "would be" allowed as a general unsecured claim for $19,477 and a DSO claim for $8,688.50.[16] Rita then converted the 2016 case from chapter 13 to chapter 7.[17] In response to Smith's request for rehearing on the opinion, the judge abated consideration of the claim objection because, in his view, conversion made the objection moot, unless the

---

[11] No. 16-30474 claim 9-1.
[12] No. 16-30474 ECF Nos. 36, 38, 50-2.
[13] No. 16-30474 ECF No. 20.
[14] No. 16-30474 ECF No. 61 at 5.
[15] No. 16-30474 ECF No. 62.
[16] No. 16-30474 ECF No. 95 at 10.
[17] No. 16-30474 ECF No. 100.

Page 5 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

trustee were to determine that there would be a distribution to unsecured creditors.[18] No order was entered on the claim objection.

In Rita's postconversion schedules, she listed both Richard (as Rick)[19] and Smith[20] as holding claims entitled to DSO priority. She received a chapter 7 discharge in the 2016 case.[21]

### G.    Current-case

Rita filed her current case under chapter 13 on November 16, 2022.

#### 1.    Smith's claim

In this case, Smith's amended proof of claim is for $38,575.85 as a "State court judgment money award."[22] He asserts that the entire amount is a DSO entitled to priority under 507(a)(1)(A) or (B). The first two of five attachments are claim calculations, labeled Tables 1 and 2, where he asserts that the petition-date balances of his circuit court and appellate judgments were $28,601.20 and $9,974.65. The third attachment is his circuit court judgment, the fourth is the court of appeals' affirmance, and the fifth is the court of appeals' money award.

In Rita's objection to Smith's claim, she argues that the claim is not entitled to priority and that its amount is incorrect for several reasons. She asks that the claim be allowed as a priority claim for $4,415.89 and as a

---

[18] No. 16-30474 ECF No. 109.
[19] No. 16-30474 ECF No. 121 Sched. E/F item 2.2.
[20] No. 16-30474 ECF No. 121 Sched. E/F item 2.3.
[21] No. 16-30474 ECF No. 129.
[22] Claim 3-2.

Page 6 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

nonpriority, unsecured claim for $34,147.60.[23] In an amended objection, she claimed that the debt was discharged in the 2016 case.[24] In her supporting memorandum, she argued that Smith's claim was discharged in the 2016 case because Smith "did not file an adversary proceeding arguing that the debt to him was nondischargeable,"[25] and "there has been no legal determination that this debt was non-dischargeable."[26]

## 2. Richard's claim

Richard's proof of claim is for $88,085.99, which he describes as a "Judgment for Attorney Fees C112468drc date 9-4-2014."[27] He asserts that, of the total claim amount, $70,468.79 is a DSO. Attachments include a spreadsheet explaining his calculation and copies of his Washington County Circuit Court judgment and a partial satisfaction of the judgment.

Rita's objection asks that Richard's claim be allowed as a priority claim for $31,829.41 and a nonpriority, unsecured claim for $7,957.35. In attachments, she explains her position on his calculation and sets forth her own.[28] Although she disputes his accounting, she does not dispute that 80 percent of the claim is entitled to priority.

---

[23] ECF No. 20.
[24] ECF No. 57.
[25] ECF No. 62 at 1:11–12.
[26] ECF No. 62 at 1:21–26.
[27] Claim 6-1.
[28] ECF No. 19.

In an amended objection and a supporting memorandum, Rita argues—as she does for Smith's claim—that Richard's debt was discharged in the 2016 case[29] because "there has been no legal determination that this debt was non-dischargeable."[30]

## III. Analysis

### A. *Smith's claim*

#### 1. Effect of 2016 opinion: Smith

The primary purpose of a federal court's opinion is to comply with the obligation to "find the facts specially and state its conclusions of law separately."[31] To conclude a lawsuit, a federal court, including a bankruptcy court, enters a judgment. When a bankruptcy court concludes a contested matter, such as a claim objection, the court enters an order, which if appealable is treated as a judgment.[32] Generally, a judgment must be "set out in a separate document"[33]—one separate from the findings of fact and conclusions of law. Because that requirement does not apply to a contested matter,[34] it's possible for an opinion on a contested matter to include a final order.[35] But the policy behind the separate-document rule serves important

---

[29] ECF No. 58.
[30] ECF No. 70 at 1:21–25.
[31] Fed. R. Civ. P. 52(a); Fed. R. Bankr. P. 9014(c).
[32] Fed. R. Bankr. P. 9001(7).
[33] Fed. R. Civ. P. 58(a).
[34] Fed. R. Bankr. P. 9014(c).
[35] Fed. R. Civ. P. 58(c); Fed. R. Bankr. P. 7058, 9014(b).

purposes, so it's often followed in contested matters, even though not required.

The opinion addressing Smith's claim in Rita's 2016 case concludes by saying that the objection "is sustained in part and overruled in part." But the sentence that follows specifies the manner in which the claim "will be allowed." Any doubt about whether the judge intended the opinion also to constitute an order is removed by its final sentence, which states that the court "will not enter any orders on the claims objections" for a specified time.[36] The opinion itself doesn't constitute an order, and it's undisputed that no separate order was entered on that objection.

No preclusive effect attaches to the opinion.

### 2.    Claim priority: Smith

#### (a)    *Circuit court judgment: Smith*

Although Smith's proof of claim asserted DSO priority for his entire claim, in his oral argument he accepted the conclusion of the bankruptcy judge in the 2016 case that the 2012 order allowing his claim as a nonpriority, unsecured claim precluded any future claim by him that the circuit court judgment is entitled to priority.

---

[36] No. 16-30474 ECF No. 95 at 10 (emphasis added).

Page 9 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

### (b)    Court of appeals judgment: Smith

##### (1)    Effect of DSO box-checking in 2016 postconversion schedules: Smith

At the hearing in this case, I granted Smith's request to take judicial notice of the 2016 postconversion schedules, and he argued that Rita's checking of the DSO box for his claim was determinative of DSO status. She disagreed and argued that whether the claim is a DSO is a fact question.

Bankruptcy schedules, which are signed under penalty of perjury, can be treated as judicial admissions when offered against a debtor; and even when schedules are amended, the original schedules can be treated as evidentiary admissions.[37] But "[t]o constitute a judicial admission, the statement must be one of fact—a legal conclusion does not suffice."[38] And the same applies to evidentiary admissions.[39]

Schedule E/F, part 1, requires that a debtor list and provide certain information about priority unsecured claims. Several items of the required information are factual, such as the creditor's name and address. But other types of form-required information are properly categorized as legal conclusions, or at least mixed statements of fact and legal conclusions. That's especially true of the requirement to state whether a debt is a DSO.

---

[37] *In re* Rolland, 317 B.R. 402, 421–22 (Bankr. C.D. Cal. 2004) (collecting cases).

[38] Pillars v. General Motors LLC (In re Motors Liquidation Co.), 957 F.3d 357, 360 (2d Cir. 2020), *quoted with approval in* A.F. v. Evans, No. 2:18-cv-1404-SI, 2022 WL 1541463 (D. Or. May 16, 2022).

[39] Hoyt v. Lane Constr. Corp., 927 F.3d 287, 299 n.5 (5th Cir. 2019).

To be a DSO, a debt owed to a former spouse or child must be "in the nature of . . . support . . . of such . . . former spouse, or child of the debtor . . ., without regard to whether such debt is expressly so designated."[40] In view of the "without regard to" phrase, whether an order or judgment is a DSO can't be determined by any particular wording in the order or judgment. And in view of the "in the nature of . . . support" phrase, determining whether an order or judgment is a DSO requires evaluation of its terms in light of both the context in which it was entered, such as its role in a divorce or in child-support or -custody litigation, and bankruptcy case law. Especially in view of the uncertain state of case law, which I discuss in part III.A.2(b)(2), whether Smith's appellate judgment is a DSO is a legal conclusion, or at least a mixed statement of fact and a legal conclusion.

Rita's checking of the DSO box was not a judicial or evidential admission that Smith's appellate judgment is entitled to priority as a DSO.

### (2) Whether award is in nature of support: Smith

When determining whether a particular debt is a DSO, the court considers whether the debt is "actually in the nature of . . . support."[41] According to the Ninth Circuit's 1998 decision in *Beaupied v. Chang (In re Chang)*,[42] one of the factors in deciding whether a debt is a DSO is "how the particular state law

---

[40] 11 U.S.C. § 101(14A)(A), (B).
[41] Friedkin v. Sternberg (*In re* Sternberg), 85 F.3d 1400, 1405 (9th Cir. 1996) (omission in original), *overruled on other grounds*, Murray v. Bammer (*In re* Bammer), 131 F.3d 788 (9th Cir. 1997) (en banc).
[42] 163 F.3d 1138, 1140 (9th Cir. 1998).

Page 11 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

characterizes the debt." But there seems to be an unacknowledged difference in how courts determine the state law's characterization of a debt for a former spouse's attorney fees.

The Ninth Circuit's 1981 decision in *Marks v. Catlow (In re Catlow)*[43] addressed whether divorce-related attorney fees constituted support not dischargeable in bankruptcy. The bankruptcy case was filed before adoption of the Bankruptcy Code in 1978; under the prior Bankruptcy Act, the discharge exception was "for alimony due or to become due, or for maintenance or support of wife or child."[44] Although *Catlow* involved fees incurred in child-custody litigation, the Ninth Circuit held that the fees were spousal support under an Arizona statute that "permit[ted] a fee award upon a showing of financial necessity."[45] Arizona law had established that the obligation to pay attorney fees in divorce or custody litigation was "founded upon a spouse's duty of support to his or her spouse" and that "'attorney's fees are as much for the wife's support as payments made directly to her . . ..'"[46] That is probably also true under the common law generally, as explained in the Second Circuit's 1981 decision in *Spong v. Pauley (In re Spong)*.[47] The *Catlow* court expressly equated child-custody litigation with divorce litigation

---

[43] 663 F.2d 960 (9th Cir. 1981).
[44] *Catlow*, 663 F.2d at 962.
[45] *Catlow*, 663 F.2d at 962 (9th Cir. 1981), citing Ariz. Rev. Stat. Ann. § 25-324 (1976).
[46] *Catlow*, 663 F.2d at 962–63.
[47] 661 F.2d 6, 9 (2d Cir. 1981).

Page 12 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

because "Arizona law makes no distinction between fees awarded for legal services related to the actual dissolution of marriage and those related to child custody proceedings held subsequent to divorce."[48]

> As Arizona law considers attorney's fees to be spousal support if awarded in the original divorce action, this characterization must therefore also apply to fees awarded in post-divorce child custody proceedings. . . .. As Catlow's debt for legal services is founded upon his state-created obligation to support his former wife, the debt is nondischargeable . . ..[49]

*Catlow*-type cases can be thought of as a category of "purpose of the award" cases—in which the inquiry is into whether the award was given for the purpose of supporting the spouse or child.

A different rationale appears in the Tenth Circuit's 1993 decision in *Jones v. Jones (In re Jones)*,[50] the Eighth Circuit's 1992 decision in *Adams v. Zentz*,[51] the Fifth Circuit's 1993 decision in *Dvorak v. Carlson (Matter of Dvorak)*,[52]–and, apparently, the Ninth Circuit's 1998 decision in *Chang*. Their rationale, as explained most extensively in *Jones*, is that all costs of a child-custody proceeding are child "support" because the proceeding itself benefits the child. *Jones*-type cases can be thought of as a category of "purpose of the proceeding" cases, where the inquiry is whether the purpose of the proceeding was to benefit the child.

---

[48] *Catlow*, 663 F.2d at 962–63 (internal quotations omitted).
[49] *Catlow*, 663 F.2d at 962–63 (internal quotations omitted) (emphasis added).
[50] 9 F.3d 878 (10th Cir. 1993).
[51] 963 F.2d 197 (8th Cir. 1992)
[52] 986 F.2d 940 (5th Cir. 1993), *cited with approval in* Liebowitz v. County of Orange (In re Liebowitz), 217 F.3d 799, 803 (9th Cir. 2000).

Page 13 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

In *Catlow*-type purpose-of-the-award cases, where attorney fees are said to be support of a former spouse, the controlling factor is usually, and perhaps always, why the court awarded the fee. If the award was because the recipient was dependent on the other spouse, then the award is spousal support. If the award was for some other reason, such as to sanction the losing spouse for unreasonable litigation behavior, then the award is not spousal support. But in *Jones*-type purpose-of-the-proceeding cases, where the fees are said to be support of a child, it makes no difference why the court awarded the fee or how it determined the award's amount. The logic of *Jones* and its kin is that the proceeding supported the child, and therefore all expenses associated with the proceeding, including attorney fees and other expenses as in *Chang*, are child support.

*Chang* is the most recent precedential Ninth Circuit decision addressing whether a divorce-related attorney-fee award is a DSO. A California state court had appointed a guardian ad litem for a child in litigation over the child's best interest, and the state court allocated the guardian's fees between the parents. The nondebtor parent paid part of the fees owed by the debtor parent. In the debtor parent's bankruptcy, the guardian and the creditor parent sought a determination that their claims were DSOs and thus nondischargeable. The bankruptcy court found the fee awards to be DSOs. The BAP reversed, but the Ninth Circuit reversed the BAP, agreeing with the bankruptcy court.

Although *Chang* cites *Catlow* as authority for an inquiry into "how the particular state law characterizes *the debt*,"[53] *Chang* also approvingly cites *Miller* (which follows *Jones*), *Jones* itself, and *Dvorak*. Specifically, *Chang* describes[54] *Miller* and *Jones* without taking issue with *Jones*'s basic holding that, "absent unusual circumstances . . ., the term 'support' encompasses the issue of custody," and "court-ordered attorney's fees arising from post-divorce custody actions are deemed in the nature of support under 11 U.S.C. § 523(a)(5) as being incurred on behalf of the child."[55]

The relevant California state law in *Chang* permitted the state court to appoint and provide for the compensation of a guardian ad litem "in consideration of [the child's] best interests."[56] The Ninth Circuit agreed with the bankruptcy court that the state statutes "created an obligation of support." The court also acknowledged that *Dvorak* held attorney fees nondischargeable under 523(a)(5) because "the hearing for which the fees were incurred was 'clearly for [the child]'s benefit and support.'"[57]

Two Ninth Circuit nonprecedential memorandums, both addressing fee awards in Arizona cases, have addressed whether child-custody fee awards are DSOs. In the 2007 memorandum in *Rehkow v. Lewis (In re Rehkow)*,[58] the

---

[53] 163 F.3d at 1140 (emphasis added).
[54] *Chang*, 163 F.3d at 1141.
[55] *Jones*, 9 F.3d at 882.
[56] *Chang*, 163 F.3d at 1140–41.
[57] *Chang*, 163 F.3d at 1141 (brackets in original).
[58] 239 F. App'x 341 (9th Cir. 2007).

Ninth Circuit affirmed the BAP, which affirmed the bankruptcy court's holding that an Arizona court's fee award constituted a DSO. The memorandum described the fees at issue as having been "incurred as a result of custody issues concerning the parties' child," and it cited the BAP's decision for the proposition that DSOs include "[a]ttorney fees, as well as fees of professionals appointed to assist the court in resolving custody disputes." The memorandum said nothing about the role of party financial resources in determining whether an award is a DSO.

The second nonprecedential decision, the Ninth Circuit's 2020 memorandum in *Rychlik v. Sodergren (In re Sodergren),*[59] addressed a bankruptcy adversary proceeding brought by a creditor parent holding an Arizona fee award from a child-custody proceeding. In the bankruptcy action, the creditor requested a determination that the fee award constituted a DSO and was thus nondischargeable under 523(a)(5). The same Arizona statute at issue in *Rehkow* permitted the fee award "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings."[60] In opposing the debtor's summary-judgment motion, the creditor, citing *Catlow,* argued that he was entitled to prevail as a matter of law under the statute's language. The bankruptcy court denied the motion; the district court affirmed; and in a two-to-one

---

[59] 802 F. App'x 277 (9th Cir. 2020).
[60] *Sodergren,* 802 F. App'x at 278, citing Ariz. Rev. Stat. § 25-324(A).

Page 16 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

memorandum decision, the Ninth Circuit affirmed. The majority opinion's bases included that—

- The statute on which *Catlow* was decided had changed from one permitting a fee award only after considering the parties' financial resources to one permitting consideration also of the reasonableness of the positions each party has taken throughout the proceedings.

- "[W]e have never held that fee awards made under [the Arizona statute] or similar statutes are automatically nondischargeable under federal bankruptcy law";[61]

- "The state court's order contains no indication either way regarding the parties' financial resources";[62] and

- The creditor "presents no evidence that the state court in fact based its fee award on his financial needs."[63]

The *Sodergren* majority's comments are consistent with the view that a fee award, even for child-custody litigation, can be a DSO only if the creditor had a financial need—in other words, the purpose-of-the-award approach. But the majority didn't say that in so many words—and it didn't address the memorandum decision in *Rehkow*, which is consistent with the purpose-of-the-proceeding approach. And *Chang*—which *is* precedential—is consistent with the purpose-of-the-proceeding approach, even though it doesn't say in so many words that a fee award for child-custody litigation can be a DSO for that reason alone. *Chang* cites *Jones*, *Miller*, and *Dvorak* as authority, and they unambiguously adopt the purpose-of-the-proceeding approach.

---

[61] *Sodergren*, 802 F. App'x at 278.
[62] *Sodergren*, 802 F. App'x at 279.
[63] *Sodergren*, 802 F. App'x at 279.

Although the case law is in a state of confusion, I conclude that the approach that is most faithful to the underlying logic of the seminal cases is as follows:

- Attorney fees from litigation over support of a former *spouse* are in the nature of spousal support only if they were intended as such, and intent is evidenced by the recipient spouse's need for support.

- But attorney fees from litigation over support of a *child* are in the nature of child support whenever they were incurred in a proceeding to determine the child's interests.

- In child-custody proceedings, all fees incurred by any participant are child support, regardless of which party has custody and regardless of which ex-spouse is in greater need of support.

The court of appeals' order explaining its fee award was marked by Rita as her Exhibit 3.[64] At the hearing, she authenticated that exhibit, and her lawyer questioned Smith about it. The order begins by describing the judgment appealed from as "changing custody of the parties' children from mother to father." Although no party asked that the order be admitted in evidence, because it was the subject of unobjected-to questioning, I will consider it to be part of the hearing record.

Because Rita's appeal was from a judgment changing child custody, it was effectively an extension of a child-custody proceeding begun in circuit court, making the court of appeals' attorney-fee award against Rita a debt to Smith for child support.

The appellate judgment is a DSO.

---

[64] ECF No. 60-3 Ex. 3.

### 3.    Claim amount: Smith's circuit court judgment

Rita has not challenged Table 1 in Smith's proof of claim, which shows that no payments were made on the circuit court judgment and that its petition-date balance of principal and interest was $28,601.20.

### 4.    Claim amount: Smith's appellate judgment

Table 2 in Smith's proof of claim is his calculation of interest accrual and application of Rita's payments on the appellate judgment.

### (a)    Payment amounts: Smith's appellate judgment

Smith's calculation of the balance due under the appellate judgment starts with the $15,000 face amount. He then debits $132 as a writ-delivery fee on June 1, 2022, and credits three payments of $1,303.82.

At the hearing, Rita discussed, without objection from Smith, a calculation spreadsheet that she had marked as her Exhibit 5.[65] Although she did not offer it in evidence, I will treat it as a demonstrative exhibit summarizing her testimony.

Rita does not challenge the $132 writ-delivery fee; she agrees that he garnished her wages. The Oregon garnishment statute allows a garnishor, such as Smith, to apply garnished funds to reimbursement of such a fee.[66]

Rita's spreadsheet also asserts that she is entitled to credits against the appellate judgment for 18 payments that she says she made involuntarily in 2017, by garnishment or tax-refund setoff, in addition to the three payments

---

[65] ECF No. 60-5 Ex. 5.
[66] Or. Rev. Stat. § 18.999(1)(a), (3), (4)(a)(B).

in Smith's calculation. She argued that she was entitled to have those additional payments credited to the appellate judgment because they were for child support that she ended up not owing. But she also conceded that "most of it [the additional payments she made] was paid back," describing a check from him for $3,784.45. There's no credit for that or any other amount on her spreadsheet.

In their early 2018 email exchange, Smith and Rita agreed that the amount he would reimburse her for child-support payments was $3,907.45. He paid her $3,784.45, claiming that she owed him $122 from "the previous child support case." At the hearing, she denied owing that separate debt. On that point, I credit his testimony and not hers. Nonetheless, $3,907.45 less $122 is $3,785.45, not $3,784.45, and he did not explain that discrepancy. Thus, $1 of the child-support payments she made to him was available to her as a credit against the judgment.

Rita is not entitled to any credits to the appellate judgment other than the three payments that Smith acknowledges and the $1 credit.

### *(b)     Payment dates: Smith's appellate judgment*

Because the latest of Rita's child-support payments to Smith was made on November 3, 2017, I will use that date for the $1 credit.

Smith and Rita use the same dates for the second and third payments of $1,303.82. They differ only on the date of the first of the three payments in

that amount: he says it was August 19, 2022, and she says it was July 29, 2022.

In a footnote in Smith's proof of claim referring to the first payment of $1,303.82, he refers to the Oregon statute under which a garnishment payment made to the court, rather than directly to the garnishor, need be credited by the garnishor only when the court administrator disburses payment to the garnishor.[67] A proof of claim "provides 'some evidence as to its validity and amount.'"[68] "'If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'"[69] I read the footnote as Smith's implicit representation that the first payment was disbursed from the court administrator, rather than from a garnishee, such as an employer, and that the disbursement was on August 19. Rita's allegation in her objection that the payment was made three weeks earlier, on July 29—coupled with the absence of an allegation in her objection or in her hearing testimony that the administrator disbursed the payment before August 19—is consistent with practicalities of

---

[67] Claim 3-2 Table 2 n. 7, citing Or. Rev. Stat. § 18.742(2).

[68] Lundell v. Anchor Const. Specialists, Inc. (*In re* Lundell), 223 F.3d 1035, 1039 (9th Cir. 2000), quoting Wright v. Holm (*In re* Holm), 931 F.2d 620, 623 (9th Cir. 1991), quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed. 1991).

[69] *Lundell*, 223 F.3d at 1039, *quoting* Ashford v. Consolidated Pioneer Mort. (*In re* Consol. Pioneer Mortg.), 178 B.R. 222, 226 (9th Cir. 1996), aff'd, 1996 WL 3393533 (9th Cir. 1996).

garnishment payment through a court administrator: the garnishee must prepare and mail a check to the administrator; the check must arrive by mail at the court; and the administrator must receive and deposit the check, wait a reasonable period of time after deposit to ensure that the check has been finally paid by the drawee bank, and then prepare and mail the administrator's check to the garnishee. In other words, Rita's allegation that the garnishment occurred on July 29 does not suffice to negate Smith's allegation that the administrator's disbursement was on August 19.

I find that the dates and amounts of payments on Smith's appellate judgment were as set forth in Table 2, plus the November 3, 2017, $1 credit.

### (c) Application of payments to interest or principal: Smith's appellate judgment

At the hearing, Rita contended that Smith's calculation of his appellate-judgment claim improperly compounds interest and that all payments should be applied only to principal.

Table 1 in Smith's proof of claim is his calculation of interest accrual and application of Rita's payments. He did not treat the $132 writ-delivery fee as an addition to principal. He applied her payments to accrued interest, rather than to principal. The payments never sufficed to pay accrued interest, so there were never any additional amounts to reduce the principal balance.

Smith's approach follows the "United States Rule" followed by the Oregon Supreme Court.[70] Rita cites no authority for her argument that payments on a judgment must be applied to principal rather than unpaid interest. Although she advanced that argument in her testimony as a mathematics expert, the correct method of applying payments on a judgment is a matter of law.

### (d)     Claim recalculation: Smith

Although Rita disputed the correctness of the principle on which Smith applied payments, the United States Rule, she did not dispute the mathematical correctness of his calculation of interest and application of payments under that rule.

Richard did not account in his spreadsheet for the $1 credit on November 3, 2017. I calculate that the interest that would not have accrued had he included that credit on that day is $0.45, so the amount he calculated should be reduced from $9,974.65 by $1.45 to $9,973.20.

### 5.     Discharge: Smith

### (a)     Adversary proceeding requirement

Rita argues that Smith's judgments, which predated the 2016 petition, were discharged by the chapter 7 discharge in that case, because he hasn't brought and prevailed on an adversary proceeding requesting a determination that the judgment debts are nondischargeable.

---

[70] First Nat. Bank v. Courtright, 161 P. 966, 968 (Or. 1917); *see* Ainslie v. Spolyar, 926 P.2d 822, 828 (Or. App. 1996).

Rita points to no law supporting that argument. She doesn't argue that the judgments are debts of a type described in 523(a)(2), (4), or (6), which would have been automatically discharged by Smith's failure to bring an adversary proceeding shortly after the 2016 case started.[71] It's true that, to obtain a court determination that a debt is or is not dischargeable, one must bring an adversary proceeding.[72] But it doesn't follow that a debt described in 523(a) is somehow discharged, even temporarily or conditionally, until the debt is determined to be nondischargeable in an adversary proceeding.

If Smith's claims are described in 523(a) (but not 523(a)(2), (4), or (6)), they were not discharged in the 2016 case, even though no adversary proceeding has yet determined their dischargeability.

### *(b)*     *Circuit court judgment: Smith*

Section 523(a)(15) makes nondischargeable "a debt . . . to a former spouse . . . of the debtor and not of the kind described in paragraph (5) that is incurred in the course of a divorce or separation. . ., divorce decree or other order of a court of record . . .."

The caption of Smith's circuit court judgment states that it was entered in the court's "Family Law Department . . . [i]n the Matter of the Marriage of" Smith and Rita, and it cites as authority for its entry Oregon Revised Statutes § 107.135(8), which authorizes an attorney-fee award in connection

---

[71] 11 U.S.C. § 523(c); Fed. R. Bankr. P. 4007(c).
[72] Fed. R. Bankr. P. 7001(6).

Page 24 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

with vacation of modification of a judgment dissolving a marriage. Those provisions of the judgment demonstrate that it represents her debt to him, her former spouse, and that the debt was incurred in the course of their divorce.

Under 523(a)(15), the circuit court judgment is nondischargeable in a chapter 7 case and was not discharged by her discharge in the 2016 case.

### (c) Appellate judgment: Smith

Section 523(a)(5) excepts from discharge a debt for a DSO. I decided in part III.A.2(b)(2) above that Smith's appellate judgment is a DSO. It is thus not dischargeable and was not discharged in the 2016 case.

### B. Richard's claim

#### 1. Effect of 2016 opinion: Richard

As with the 2016 opinion on Smith's claim, the 2016 opinion on Richard's claim itself doesn't constitute an order and isn't preclusive, either as to priority or amount.

#### 2. Claim priority: Richard

In Richard's proof of claim in this case, he claimed DSO priority for 80 percent of the total claim. Neither of Rita's objections challenges Richard's entitlement to priority for that portion of the claim.

#### 3. Claim amount: Richard

##### (a) Payment amounts: Richard

Richard's proof of claim includes a calculation spreadsheet. In Rita's first objection, she includes her own, different calculation spreadsheet with

Page 25 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

payments in addition to, and on earlier dates than, those on his spreadsheet. In her hearing testimony, she referred to a revised calculation spreadsheet, which she marked as her Exhibit 15.[73] The exhibit lists one payment not on her objection spreadsheet: $357.11 on January 26, 2018; a payment in that amount three days later appears on his proof of claim spreadsheet. The exhibit also omits the final six payments on her objection spreadsheet. The exhibit is otherwise the same as her objection spreadsheet. Although the exhibit was not offered in evidence, I will treat it as a demonstrative exhibit summarizing her testimony.

Rita also referred in her testimony to paystubs that she had marked as her Exhibits 9 through 12.[74] The paystubs show "Civil Garnishment" deductions that she asserts were for Richard's judgment. Although the paystubs also were not offered in evidence, he did not object to her references to them. In any case, I am unaware of any basis on which he could successfully have opposed their admission in evidence. I will treat them as part of the hearing record.

Although the payment amounts on the two spreadsheets largely match, there are five differences to reconcile. First, in Richard's testimony, he denied receiving the first seven payments that Rita lists, which she dates on March 13 through June 5, 2015, which total $2,740.41. Although the paystub

---

[73] ECF No. 86 Ex. 15.
[74] ECF Nos. 65-9 – 65-12 Exs. 9–12.

garnishment deductions do not identify the garnishee, most of the payments on her list that do correspond with paystub entries also correspond with payments on his list. For that reason, I find credible her testimony that she confirmed with her employer that the garnishment deductions on the paystubs were in fact on account of Richard's judgment and paid by the employer to his lawyer, who issued the garnishment writ. Because the dates and amounts of the first seven payments she lists are corroborated by paystubs,[75] I find that Richard received those payments.

Second, Richard includes a July 2, 2015, payment of $1,095.10, but there is no payment on Rita's spreadsheet anywhere close to that amount. The date of that payment follows the seven payments that she lists but he doesn't, suggesting that his $1,095.10 payment reflects, at least in part, ones listed by her but not by him. That understanding is consistent with her Exhibit 13,[76] where she disclaims payment of $1,095.10 and states that "checks were sent separately prior to this date," presumably referring to the July 2 date he lists for the $1,095.10 payment. Also, on the same date as the $1,095.10 payment, he lists an additional payment of $311.30, but the payments that she acknowledges were all made biweekly, so it's unlikely that he received $1,095.10 as a single payment on the same day as the $311.30 payment. To

---

[75] ECF No. 65-9 Ex. 9 at 1, 4–7, 10, 13–14.
[76] ECF No. 65-13 Ex. 13.

avoid double-counting, I will not consider the $1,095.10 payment to have been made in addition to the first seven payments that she lists.

Third, the $311.30 payment that Richard lists on July 2 corresponds to a July 2 payment that Rita lists for $323.80. Because her amount is corroborated by a paystub,[77] I find that her payment that day was $323.80, rather than $311.30.

Fourth, Richard lists a July 6, 2015, payment of $311.34 that Rita doesn't list. But because that payment corresponds in rough amount to other payments that she did claim to have made, I accept his concession that he received it.

Fifth and finally, for the four payments from mid-July through August 2015, the amounts Richard lists are less by $862.06 than the amounts Rita lists—but the paystubs for those entries contain no Civil Garnishment deductions.[78] His proof of claim is evidence that he received certain payments and, implicitly, no other or greater payments. She did not explain why her paystubs for those dates do not show deductions corresponding to the payments on her spreadsheet; the lack of that explanation undermines the value of her testimony, through her spreadsheet, that the amounts she lists represent garnishments by him. It's also true that he provided no corroboration of his spreadsheet, but it's more difficult, if possible at all, for a

---

[77] ECF No. 65-9 Ex. 9 at 4.
[78] ECF No. 9 at 2, 12, 18, 20.

Page 28 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

creditor to prove the absence of payments on a debt than it is for the debtor to prove payment. His evidence that he correctly listed the amounts of the four payments from mid-July through August 2015 outweighs, even if only slightly, her uncorroborated testimony that those payments were in the greater amounts she lists. I find that he received the lesser amounts that he lists.

### *(b)* *Payment dates: Richard*

When the garnishee on an Oregon judgment pays the garnishor (not the court administrator), the garnishor must credit the payment not when the garnishee withholds payment from the debtor, but instead "on the date the garnishor receives the payment."[79] The payment dates on Richard's and Rita's spreadsheets mostly reflect what one would expect of garnished payments: she dates payments for which she produced paystubs on the paystub dates; she dates other payments on a biweekly schedule consistent with the paystub dates; and he generally dates payments several days after her dates. That difference is consistent with the employer having to cut and mail checks for the garnished amounts. For the payments that both parties acknowledge, the time that passed between her dates and his ranges from three to 28 days, with a median of four days.

Because the seven payments from March 13 through June 5, 2015, are not on Richard's list, I have only the paydays, which are corroborated by paystub

---

[79] Or. Rev. Stat. § 18.742(1).

Page 29 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

dates. To account for the time it must have taken for payments mailed by the employer to be received, I find that each of those payments was received four days (the median time) after the paydays.

Four of Richard's date entries are 10 or more days after the paydays. I find it not credible that it took that long after paydays for payments to be received from an employer garnishee (as opposed to the different and lengthier process for payment through the court administrator), and I find instead that those six payments were received four days (the median time period) after the paydays; in each case, the fourth day was a weekday. Those entries are—

- $321.05 withheld on June 16, 2017,[80] which I find was received on June 20, not June 26;

- $375.16 withheld on August 11, 2017,[81] which I find was received on August 15, not August 21;

- $375.16 withheld on August 25, 2017,[82] which I find was received on August 29, not September 7; and

- $229.41 withheld on September 6, 2019,[83] which I find was received on September 10, not October 4.

---

[80] ECF No. 65-9 Ex. 9 at 4.
[81] ECF No. 65-11 Ex. 11 at 14.
[82] ECF No. 65-11 Ex. 11 at 15.
[83] ECF No. 65-12 Ex. 12 at 14.

### (c)   Application of payments to interest or principal: Richard

Richard's application of payments to interest and principal is consistent with the United States Rule, discussed in part III.A.4(c) above. I apply that rule in my spreadsheet described below.

### (d)   Claim recalculation: Richard

To reflect my findings in this part III.B.3 of the dates and amounts of payments on Richard's judgment, and to recalculate the application of payments to interest and principal, I have prepared the attached spreadsheet, labeled "Richard's Claim." On the attachment, the dates and amounts of payments according to Rita come from Exhibit 15, rather than from her objection spreadsheet. It concludes that, at the petition date, the balance due under his judgment was $83,264.55. Consistent with his assertion in his proof of claim, uncontested by Rita, that 80 percent of his claim is a DSO, the petition-date DSO and nonpriority balances were $66,611.64 and $16,652.91.

## 4.   Discharge: Richard

### (a)   80-percent DSO portion of Richard's claim

Under 523(a)(5), the 80 percent of the judgment that is a DSO is not dischargeable.

### (a)   20-percent non-DSO portion of Richard's claim

According to the caption of the partial satisfaction of judgment, the action in which it was filed—and thus in which the judgment was filed—is in the

Page 31 – MEMORANDUM DECISION ON DEBTOR'S OBJECTIONS etc.

circuit court's "Department of Domestic Relations" and specifically is "In the Matter of the Marriage" of Richard and Rita. Her claim objection does not dispute the authenticity of the judgment and satisfaction copies attached to the proof of claim. In her brief's argument against treating the opinion in the 2016 as preclusive, she relied on the substance of a bill prepared by Richard's lawyer describing the services for which the judgment was entered.[84] The matter name on that bill, which Rita filed as her Exhibit 8, is "DR-Dissolution," and it refers to the judgment as one for "Unlimited Separation."[85]

In both a prehearing brief[86] and in oral argument on her objection to the proof of claim, Rita's argument for discharge was based only on Richard not having brought a nondischargeability action; she did not address the 523 discharge exceptions, including 523(a)(15).

Because the judgment was entered a divorce or separation, the non-DSO 20 percent of Richard's claim under the judgment is "a debt . . . to a former spouse . . . that is incurred in the course of a divorce or separation. . ., divorce decree or other order of a court of record . . .." Under 523(a)(15), it is nondischargeable in a chapter 7 case.

As I explained in part III.A.5(a) above, Rita's debts that are nondischargeable under 523(a)(5) and (15) were not discharged in the 2016

---

[84] ECF No. 70 at 2:16–18.
[85] ECF No. 65-8 Ex. 8 at 7.
[86] ECF No. 70 at 1:11–12, 21–25.

case, even temporarily or conditionally, by the absence of an adversary proceeding determining that they are nondischargeable. Because Richard's claim is entirely nondischargeable under those paragraphs, none of it was discharged in the 2016 case.

## IV.   Conclusion

I will allow Smith's proof of claim (1) as a claim with 507(a)(1) priority for $9,973.20, which is the petition-date balance under his appellate judgment, and (2) as a nonpriority, unsecured claim for $28,601.20, which is the petition-date balance under his circuit court judgment.

I will allow Richard's proof of claim as (1) a claim with 507(a)(1) priority for $66,611.64, which is 80 percent of the petition-date balance under his circuit court judgment, and (2) as a nonpriority, unsecured claim for $16,652.91, which is 20 percent of the petition-date balance due under that judgment.

[Attachment follows.]

Richard's Claim

| Date per Richard | Payment per Richard | Date per Rita | Day diff | Payment per Rita | Paystub exhibit | Payment adjustments | All payments, adjusted | Date, adjusted | Days | Interest accrual | Interest balance | Principal balance | Total due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/04/14 | | | | | | | | 09/04/14 | | | | $ 60,000.00 | $ 60,000.00 |
| | | 03/13/15 | | 497.42 | 9:06 | 497.42 | 497.42 | 03/17/15 | 194 | 2,870.14 | 2,372.72 | 60,000.00 | 62,372.72 |
| | | 03/27/15 | | 497.42 | 9:14 | 497.42 | 497.42 | 03/31/15 | 14 | 207.12 | 2,082.42 | 60,000.00 | 62,082.42 |
| | | 04/10/15 | | 497.42 | 9:01 | 497.42 | 497.42 | 04/14/15 | 14 | 207.12 | 1,792.12 | 60,000.00 | 61,792.12 |
| | | 04/24/15 | | 276.87 | 9:10 | 276.87 | 276.87 | 04/28/15 | 14 | 207.12 | 1,722.38 | 60,000.00 | 61,722.38 |
| | | 05/08/15 | | 323.76 | 9:07 | 323.76 | 323.76 | 05/12/15 | 14 | 207.12 | 1,605.74 | 60,000.00 | 61,605.74 |
| | | 05/22/15 | | 323.76 | 9:15 | 323.76 | 323.76 | 05/26/15 | 14 | 207.12 | 1,489.10 | 60,000.00 | 61,489.10 |
| | | 06/05/15 | | 323.76 | 9:05 | 323.76 | 323.76 | 06/09/15 | 14 | 207.12 | 1,372.47 | 60,000.00 | 61,372.47 |
| 06/22/15 | 311.30 | 06/19/15 | 3 | 311.30 | 9:13 | | 311.30 | 06/22/15 | 13 | 192.33 | 1,253.50 | 60,000.00 | 61,253.50 |
| 07/02/15 | 311.30 | 07/03/15 | - | 323.80 | 9:04 | 323.80 | 323.80 | 07/02/15 | 10 | 147.95 | 1,077.64 | 60,000.00 | 61,077.64 |
| 07/02/15 | 1,095.10 | | | - | | (1,095.10) | - | 07/02/15 | - | - | 1,077.64 | 60,000.00 | 61,077.64 |
| 07/06/15 | 311.34 | | | - | | | 311.34 | 07/06/15 | 4 | 59.18 | 825.48 | 60,000.00 | 60,825.48 |
| 07/16/15 | 451.23 | 07/17/15 | - | 463.69 | | | 451.23 | 07/16/15 | 10 | 147.95 | 522.19 | 60,000.00 | 60,522.19 |
| 07/31/15 | 451.22 | 07/31/15 | - | 463.68 | | | 451.22 | 07/31/15 | 15 | 221.92 | 292.89 | 60,000.00 | 60,292.89 |
| 08/18/15 | 90.22 | 08/14/15 | 4 | 463.68 | | | 90.22 | 08/18/15 | 18 | 266.30 | 468.97 | 60,000.00 | 60,468.97 |
| | | 08/28/15 | | 463.68 | | | - | 09/01/15 | 14 | 207.12 | 676.10 | 60,000.00 | 60,676.10 |
| 10/15/15 | 398.66 | 10/09/15 | 6 | 398.66 | | | 398.66 | 10/15/15 | 44 | 650.96 | 928.40 | 60,000.00 | 60,928.40 |
| 10/28/15 | 430.47 | 10/23/15 | 5 | 430.47 | | | 430.47 | 10/28/15 | 13 | 192.33 | 690.25 | 60,000.00 | 60,690.25 |
| 11/09/15 | 405.25 | 11/06/15 | 3 | 405.25 | | | 405.25 | 11/09/15 | 12 | 177.53 | 462.54 | 60,000.00 | 60,462.54 |
| 11/24/15 | 405.25 | 11/20/15 | 4 | 405.25 | | | 405.25 | 11/24/15 | 15 | 221.92 | 279.21 | 60,000.00 | 60,279.21 |
| 12/08/15 | 440.74 | 12/04/15 | 4 | 440.74 | | | 440.74 | 12/08/15 | 14 | 207.12 | 45.59 | 60,000.00 | 60,045.59 |
| 12/22/15 | 536.72 | 12/18/15 | 4 | 536.72 | | | 536.72 | 12/22/15 | 14 | 207.12 | - | 59,210.57 | 59,210.57 |
| 12/31/15 | | | | | | | - | 12/31/15 | 9 | 131.40 | 131.40 | 59,210.57 | 59,341.97 |
| 01/11/16 | 410.18 | 01/04/16 | 7 | 410.18 | 10:01 | | 410.18 | 01/11/16 | 11 | 160.16 | - | 58,508.83 | 58,508.83 |
| 02/04/16 | 477.83 | 01/29/16 | 6 | 477.83 | 10:02 | | 477.83 | 02/04/16 | 24 | 345.30 | - | 57,685.70 | 57,685.70 |
| 12/31/16 | | | | | | | - | 12/31/16 | 331 | 4,695.24 | 4,695.24 | 57,685.70 | 62,380.94 |
| 06/14/17 | 321.04 | 06/09/17 | 5 | 321.04 | | | 321.04 | 06/14/17 | 165 | 2,346.94 | 6,721.14 | 57,685.70 | 64,406.84 |
| 06/26/17 | 321.05 | 06/16/17 | 10 | 321.05 | 11:10 | | 321.05 | 06/26/17 | 12 | 170.69 | 6,570.77 | 57,685.70 | 64,256.47 |
| 07/05/17 | 321.04 | 06/30/17 | 5 | 321.04 | 11:11 | | 321.04 | 07/05/17 | 9 | 128.01 | 6,377.75 | 57,685.70 | 64,063.45 |
| 07/17/17 | 375.21 | 07/14/17 | 3 | 375.21 | 11:12 | | 375.21 | 07/17/17 | 12 | 170.69 | 6,173.22 | 57,685.70 | 63,858.93 |
| 07/31/17 | 375.17 | 07/28/17 | 3 | 375.17 | 11:13 | | 375.17 | 07/31/17 | 14 | 199.13 | 5,997.19 | 57,685.70 | 63,682.89 |
| 08/21/17 | 375.16 | 08/11/17 | 10 | 375.16 | 11:14 | | 375.16 | 08/21/17 | 21 | 298.70 | 5,920.73 | 57,685.70 | 63,606.43 |
| 09/07/17 | 375.16 | 08/25/17 | 13 | 375.16 | 11:15 | | 375.16 | 09/07/17 | 17 | 241.81 | 5,787.38 | 57,685.70 | 63,473.08 |
| 09/15/17 | 375.21 | 09/08/17 | 7 | 375.21 | 11:16 | | 375.21 | 09/15/17 | 8 | 113.79 | 5,525.96 | 57,685.70 | 63,211.66 |
| 10/26/17 | 347.82 | 10/20/17 | 6 | 347.82 | 11:17 | | 347.82 | 10/26/17 | 41 | 583.18 | 5,761.32 | 57,685.70 | 63,447.02 |
| 11/06/17 | 345.55 | 11/03/17 | 3 | 345.55 | 11:18 | | 345.55 | 11/06/17 | 11 | 156.46 | 5,572.23 | 57,685.70 | 63,257.93 |
| 11/20/17 | 345.55 | 11/17/17 | 3 | 345.55 | 11:19 | | 345.55 | 11/20/17 | 14 | 199.13 | 5,425.81 | 57,685.70 | 63,111.51 |
| 12/07/17 | 352.98 | 12/01/17 | 6 | 352.98 | | | 352.98 | 12/07/17 | 17 | 241.81 | 5,314.64 | 57,685.70 | 63,000.34 |
| 12/18/17 | 379.49 | 12/15/17 | 3 | 379.49 | | | 379.49 | 12/18/17 | 11 | 156.46 | 5,091.61 | 57,685.70 | 62,777.31 |
| 01/04/18 | 345.55 | 12/29/17 | 6 | 345.55 | | | 345.55 | 01/04/18 | 17 | 241.81 | 4,987.87 | 57,685.70 | 62,673.57 |
| 01/29/18 | 357.11 | 01/26/18 | 3 | 357.11 | 12:05 | | 357.11 | 01/29/18 | 25 | 355.60 | 4,986.35 | 57,685.70 | 62,672.05 |
| 02/15/18 | 350.54 | 02/09/18 | 6 | 350.54 | 12:03 | | 350.54 | 02/15/18 | 17 | 241.81 | 4,877.62 | 57,685.70 | 62,563.32 |
| 02/26/18 | 350.54 | 02/23/18 | 3 | 350.54 | 12:04 | | 350.54 | 02/26/18 | 11 | 156.46 | 4,683.54 | 57,685.70 | 62,369.24 |
| 03/12/18 | 350.54 | 03/09/18 | 3 | 350.54 | 12:10 | | 350.54 | 03/12/18 | 14 | 199.13 | 4,532.14 | 57,685.70 | 62,217.84 |
| 03/28/18 | 350.54 | 03/23/18 | 5 | 350.54 | 12:11 | | 350.54 | 03/28/18 | 16 | 227.58 | 4,409.18 | 57,685.70 | 62,094.88 |
| 04/09/18 | 350.54 | 04/06/18 | 3 | 350.54 | 12:01 | | 350.54 | 04/09/18 | 12 | 170.69 | 4,229.32 | 57,685.70 | 61,915.02 |
| 04/23/18 | 350.57 | 04/20/18 | 3 | 350.57 | 12:02 | | 350.57 | 04/23/18 | 14 | 199.13 | 4,077.89 | 57,685.70 | 61,763.59 |
| 05/10/18 | 350.54 | 05/04/18 | 6 | 350.54 | 12:12 | | 350.54 | 05/10/18 | 17 | 241.81 | 3,969.15 | 57,685.70 | 61,654.85 |
| 05/21/18 | 350.54 | 05/18/18 | 3 | 350.54 | 12:13 | | 350.54 | 05/21/18 | 11 | 156.46 | 3,775.08 | 57,685.70 | 61,460.78 |
| 06/04/18 | 350.54 | 06/01/18 | 3 | 350.54 | 12:07 | | 350.54 | 06/04/18 | 14 | 199.13 | 3,623.67 | 57,685.70 | 61,309.37 |
| 06/22/18 | 350.54 | 06/15/18 | 7 | 350.54 | 12:08 | | 350.54 | 06/22/18 | 18 | 256.03 | 3,529.16 | 57,685.70 | 61,214.86 |
| 07/02/18 | 350.54 | 06/29/18 | 3 | 350.54 | 12:09 | | 350.54 | 07/02/18 | 10 | 142.24 | 3,320.86 | 57,685.70 | 61,006.56 |
| 07/19/18 | 228.12 | 07/13/18 | 6 | 228.12 | 12:06 | | 228.12 | 07/19/18 | 17 | 241.81 | 3,334.55 | 57,685.70 | 61,020.25 |
| 10/04/19 | 229.41 | 09/06/19 | 28 | 229.41 | 12:14 | | 229.41 | 10/04/19 | 442 | 6,286.95 | 9,392.09 | 57,685.70 | 67,077.79 |
| 12/31/19 | | | | | | | - | 12/31/19 | 88 | 1,251.70 | 10,643.79 | 57,685.70 | 68,329.49 |
| 12/31/20 | | | | | | | - | 12/31/20 | 366 | 5,191.71 | 15,835.50 | 57,685.70 | 73,521.20 |
| 11/16/22 | | | | | | | - | 11/16/22 | 685 | 9,743.35 | $ 25,578.85 | $ 57,685.70 | $ 83,264.55 |
| Totals | 16,153.40 | | | 18,361.93 | | | | | | | | | |

| | | Median | 4 | | | | 80% | $ 66,611.64 |
|---|---|---|---|---|---|---|---|---|

| 80% | $ 66,611.64 |
|---|---|
| 20% | $ 16,652.91 |
| Total | $ 83,264.55 |

Richard's Claim

| Key | |
|---|---|
| Date per Richard | Date of payment on Richard's spreadsheet |
| Payment per Richard | Amount of payment on Richard's spreadsheet |
| Date per Rita | Date of payment on Rita's spreadsheet |
| Day diff | For payments on both spreadsheets, Rita's date minus Richard's date |
| Payment per Rita | Amount of payment on Rita's spreadsheet |
| Paystub exhibit | For paystubs with corresponding deductions, exhibit and page numbers |
| Payment adjustments | Adjustments to amounts of payments on Richard's spreadsheet |
| All payments, adjusted | Amounts of all payments, adjustments to Richard's payment amounts |
| Date, adjusted | All payment dates, including dates adjusted |
| Days | Date for current row minus date for row above |
| Interest accrual | 9% interest on principal balance since date of row above; 365 as dividend except for 2016, 2020 |

### # # #

cc:    Carey Smith
         Richard Luetkenhaus